| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**NORRIS, McLAUGHLIN & MARCUS, PA**<br>721 Route 202-206<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700 (Tel)<br>(908) 722-0755 (Fax)<br>Morris S. Bauer, Esq.<br>*Proposed Attorneys for the*<br>*Debtors/Debtors-In-Possession* | |
| In Re:<br><br>VISUAL MANAGEMENT SYSTEMS, INC.,<br>VISUAL MANAGEMENT SYSTEMS HOLDING, INC.,<br>VISUAL MANAGEMENT SYSTEMS, LLC,<br>AND INTELLIGENT PRODUCT DEVELOPMENT<br>GROUP, LLC<br><br>Debtors. | Chapter 11<br><br>Case Nos.    10-44748<br>10-44749<br>10-44750<br>10-44751<br><br>Judge: |

**MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER AUTHORIZING
INTERIM AND FINAL USE OF CASH COLLATERAL**

Visual Management Systems, Inc. ("VMS, Inc."), Visual Management Systems Holding, Inc. ("VMSH, Inc."), Visual Management Systems, LLC ("VMS, LLC"), and Intelligent Product Development Group, LLC, ("IPDG", and together with VMS, Inc. and VMS, LLC, the "Debtors"), by and through the Debtors' proposed counsel, Norris McLaughlin & Marcus, P.A., hereby move before this Court (the "Motion") for entry of an order authorizing the Debtors' interim and final use of cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent as follows:

## INTRODUCTION AND JURISDICTION

1. On the date hereof (the "Petition Date"), each of the Debtors filed a petition for relief under Chapter 11 of Bankruptcy Code. The Debtors continue to operate their businesses as a debtors-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

2. As set forth below, granting the Debtors the relief requested in the Motion is crucial to the Debtors' ability to operate their businesses and/or proceed to maximize asset values for the benefit of creditors during these Chapter 11 proceedings without interruption.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (M).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409 and 1409.

## BACKGROUND

5. A thorough description of the Debtors' operations is set forth in the Affidavit of Jason Gonzalez in Support of First Day Motions (the "Gonzalez Affidavit"), which is being filed contemporaneously with, and in support of, this Motion. The Gonzalez Affidavit includes, among other things, and without limitation, descriptions of the Debtors' formation, corporate forms, pre-petition financing, the events precipitating these Chapter 11 filings, as well as the Debtors' objectives while in Chapter 11. The Gonzalez Affidavit is incorporated herein by reference as if fully set forth herein.

6. VMS, Inc. is the sole owner of shares of VMSH, Inc. VMSH, Inc. is the sole member of VMS, LLC and IPDG.[1] The Debtors conduct their operations through VMS, LLC, which provides protective technology solutions and remote management surveillance systems, and IPDG, which designs, manufactures and sells DVR's and NVR's.

---

[1] A third non-debtor wholly owned subsidiary of VMSH, Inc. is VMS Financial Services, LLC, which was formed to provide equipment leasing services; however, as of this date is not engaged in business.

7. VMS, Inc. is a publicly traded company. Its common stock may be considered a "penny stock". It was formerly quoted on the OTC Bulletin Board, but due to financial constraints relevant to its current petition, it has been unable to timely file its reports with the SEC, and currently trades on the "Pink Sheets", which provides significantly less liquidity than a securities exchange or an automated quotation system.

8. Since the inception of operations, the Debtors have faced the risks and difficulties of a growth company including the uncertainties of market acceptance, competition, cost increases and delays in achieving business objectives. The Debtors have experienced operating losses for the years ended December 31, 2009 and 2008. The losses were attributed, in part, to a substantial decrease in revenue due to the downturn in the larger economy, and the reduction in the Debtors' sales staff combined with an established overhead costs base which could not be reduced at the same rate that revenues declined and non-cash charges attributable to conversions of debt to equity. In addition, the Debtors have been confronted with limited liquidated resources and have been forced to combat litigation.

9. The Debtors currently employ six (6) full-time employees and three (3) part-time employees. The Debtors' principal executive offices are located at 1000 Industrial Way North, Suite C, Toms River, New Jersey 08755.

10. The Debtors' assets as of the Petition Date consist of (i) cash in the amount of approximately $20,000; (ii) accounts receivable in the amount of approximately $80,000; (iii) inventory in the amount of approximately $160,000 at the lower of costs or market; (iv) property and equipment having a value of approximately $13,000; and (v) software intellectual property having a value in an undetermined amount.

11. On November 31, 2007, the Debtors entered into a securities purchase agreements with three affiliated institutional investors for the sale of original issue discount 5% senior secured convertible debentures and common stock purchase warrants. The three institutional

investors are Enable Growth Partners LP, Enable Opportunity Partners LP and Pierce Diversified Strategy Master Fund LLC, ENA (collectively "Enable"). In the transaction with Enable, the Debtors issued an aggregate of $3.75MM principal amount of the debentures at an original issue discount of 20% and warrants to purchase in aggregate of 11,250,000 shares of the Debtors' commons stock. As of the Petition Date, the total principal balance of the debentures owing to Enable aggregated $5,909,727.98. This obligation is secured by all of the assets of the Debtors. The Enable obligations appear to be secured by properly filed UCC statements.

12. As of the Petition Date, the Debtors have outstanding tax obligations aggregating approximately $450,000. In addition, the unsecured debt including judgments is approximately $5,850,000.

13. The Debtors' propose the use of the Enable's Cash Collateral during the pendency of these cases in accordance with the Debtors' budget (the "Budget") attached hereto as Exhibit "A".

14. The Debtors do not intend to languish in Chapter 11. The Debtors are a party to Software Development and Technology License Agreement with Royal Services and Rentals, Inc. ("Royal") and an Installation and Evaluation Contract with Speedway SuperAmerica, LLC. ("SSA") These agreements represent a highly realistic potential for very substantial revenue streams upon completion of long term software development projects for those customers currently nearing finalization. In the case of Royal, the Debtors have spent a year developing technology to allow for transmission of real-time, highly compressed video over low bandwidth satellite data uplink for the oil-field services industry. In the case of SSA, the Debtors have spent almost two years developing a customized surveillance software suite for rollout to SSA's 1700+ fueling station locations. The Debtors anticipate these contracts upon product completion

and acceptance to yield at least an additional $2,000,000 in annual revenue for each of the next three years, on top of their existing operations. The Debtors have also had preliminary discussions with Enable, who it anticipates will support continued operations. The Debtors will have discussions with all parties regarding the future operations and the prospects for financing.

15. The Debtors intend to quickly file a plan of reorganization that will allow for the maximizing of asset values for the benefit of all creditors.

16. The Debtors require the continued use of Cash Collateral in order to continue their efforts to stabilize and proceed accordingly.

## RELIEF REQUESTED AND REASONS THEREFORE

17. By this Motion, the Debtor seeks authority to use cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of the Bankruptcy Code.

18. As set forth in the Gonzalez Affidavit, Enable has an alleged perfected security interest in the Debtors' assets, including its cash, cash equivalents and accounts receivable (collectively, the "Cash Collateral")

19. The Debtors should be authorized to use the Cash Collateral in the ordinary course of its business and in accordance with the Budget annexed hereto as Exhibit "A". As articulated in more detail in the Gonzalez Affidavit, Enable is adequately protected by a monthly payment, the fact their collateral will not be diminishing in value, and the anticipated positive cash flow in the near term.

20. For the Debtors to have an opportunity to reorganize for the benefit of all creditor, the Debtors must be authorized to use the Cash Collateral.

## LEGAL AUTHORITY

21. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as

"cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . . " and the proceeds thereof. Pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001 (b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until this Court authorizes the use of cash collateral after notice and a hearing, upon a finding that the interest of the secured party is adequately protected.

22. Section 363(c)(2) of the Bankruptcy Code permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection. "Adequate Protection" is not defined in the Bankruptcy Code, although section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected.

23. "Adequate Protection" is aptly described as "a balancing of the debtor's and a creditor's respective harm." *In re Carson,* 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted). The legislative history to section 361 of the Bankruptcy Code reflects Congressional intent to give the Court flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. *In re 5-Leaf Cover Corp.,* 6 B.R. 463, 466 (Bankr. S.D.W.Va. 1980).

24. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. *In re Shriver,* 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); *In re South Village, Inc.,* 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. *In re Ramco Well Service, Inc.,* 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Thus, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. *Id;* accord, *In re Price,* 40 B.R. 578, 580 (Bankr. N.D. Tex. 1984).

25. In this case, the Debtors will be able to make a monthly adequate protection payment to Enable and Enable's collateral will not diminish in the near term.

26. The Debtors hereby seek interim and final use of cash collateral to preserve its assets so as to maintain and maximize their value for the benefit of all parties-in-interest.

27. A denial of the use of Cash Collateral to fund the Debtors' day-to-day operations and restructuring costs will severely harm the Debtors at a critical time since the Debtors are without sufficient unencumbered funds to meet its ongoing operating expenses and restructuring costs.

## NOTICE

28. Notice of this Motion and the proposed form of order has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' prepetition lenders; and (iii) each of the Debtors' twenty (20) largest unsecured creditors. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

29. The Debtors respectfully seek a two-part hearing process. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor seeks a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

30. Second, the Debtors seek a final hearing on at least fifteen (15) days' notice. At a minimum, the Debtors propose to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to the Office of the United States Trustee, all secured creditors, the twenty (20) largest unsecured creditors on a consolidated basis, any other parties claiming an interest in the cash collateral, and any other party who has requested notice.

## NO PRIOR REQUEST

31. No previous motion for the relief sought herein has been made to this or to any other court.

## WAIVER OF BRIEF

32. As no novel issue of law is raised and the relevant authorities relied upon by the Debtors are set forth herein, the Debtors respectfully request that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

WHEREFORE, the Debtors respectfully request that this Court preliminarily and finally approve the Debtors' use of Cash Collateral, pursuant to the Budget, and in the ordinary course of business, and grant such other and further relief as this Court deems just and equitable

DATED: November 8, 2010                    Respectfully submitted,

**NORRIS, McLAUGHLIN & MARCUS, PA**
*Proposed Counsel for the*
*Debtors and Debtors-In-Possession*

By:/s/ *Morris S. Bauer*
Morris S. Bauer, Esq.
721 Route 202-206
Bridgewater, NJ 08807
(908) 722-0700 Telephone
(908) 722-0755 Facsimile

**EXHIBIT "A"**

**Visual Management Systems, Inc., Proposed Budget**

| Minimum Operating Expenses | 1 Month | 3 Month |
|---|---|---|
| Payroll - All Current Employees (less HC Digital) | $42,000.00 | $126,000.00 |
| Rent - NJ and Ohio Facilities | $4,800.00 | $14,400.00 |
| Utilities | $1,000.00 | $3,000.00 |
| Telephone & Internet | $2,000.00 | $6,000.00 |
| Corporate Insurance | $7,000.00 | $21,000.00 |
| Health Insurance | $3,000.00 | $9,000.00 |
| Auto Notes Payable | $2,000.00 | $6,000.00 |
| Office Expenses, Shipping | $6,000.00 | $18,000.00 |
| Travel & Vehicle Expenses | $2,500.00 | $7,500.00 |
| Monthly Bankruptcy Attorney Fee | $10,000.00 | $30,000.00 |
| Enable Adequate Protection Payment | $10,000.00 | $30,000.00 |
| Accounting 1099 Employee | $2,500.00 | $7,500.00 |
| Software Development 1099 Employee | $11,000.00 | $33,000.00 |

**Total**  $103,800.00  $311,400.00

| Revenue Projection | 1 Month | 3 Month |
|---|---|---|
| El Rancho Taco Bell Installation (per month at least 6 months of work) | $11,500.00 | $34,500.00 |
| Sarku Sales and Installation (per month, at least 6 months of work) | $15,000.00 | $45,000.00 |
| On-Site Service | $7,500.00 | $22,500.00 |
| Remote Tech Support | $2,500.00 | $7,500.00 |
| DVR Repair | $7,500.00 | $22,500.00 |
| Returning Customer Dealer Sales | $5,000.00 | $15,000.00 |
| New Dealer Sales | $27,500.00 | $82,500.00 |
| New Installation Sales | $80,000.00 | $240,000.00 |

**Total**  $156,500.00  $469,500.00

**Parts Cost for Stated Revenue**  $51,645.00  $154,935.00

**Free Cash**  $1,055.00  $3,165.00